THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLUOR ENTERPRISES, INC.

      Plaintiff,

v.                                                            Case No. 8:19-cv-00224-WFJ-AAS

DUKE ENERGY FLORIDA, LLC, f/k/a
DUKE ENERGY FLORIDA, INC.

      Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, Fluor Enterprises, Inc. ("Fluor"), by and through its undersigned attorneys, hereby files this Amended Complaint pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure and moves this Court for judgment against Defendant Duke Energy Florida, LLC, formerly known as Duke Energy Florida, Inc. ("Duke Energy"), on the following grounds:

## NATURE OF ACTION

1. This is an action for declaratory judgment and damages resulting from Duke Energy's wrongful, premature and bad faith draw down of a $67,000,000 Letter of Credit that Fluor obtained and provided to Duke Energy pursuant to a written contract dated October 15, 2014 between Fluor and Duke Energy (the "Agreement") for the engineering, procurement and construction of a Combustion Turbine Combined Cycle Electrical Generator Facility in Citrus County, Florida (the "Project").

2. Without any prior notification to Fluor of its intention to do so, Duke Energy wrongfully drew down said Letter of Credit on January 7, 2019 based upon an unsubstantiated payment demand contained in a simple one-page invoice to Fluor on December 21, 2018 in the

amount of $108,944,580 for alleged additional costs claimed by Duke Energy arising out of delays to the completion of the Project.

3.     Said invoice was totally devoid of any breakdown, detail, explanation or supporting documentation in the form of contemporaneous business or accounting records from Duke Energy to verify that the amount demanded did, in fact, result from costs that Duke Energy was entitled to charge against Fluor based upon the terms of the aforedescribed contract between Fluor and Duke Energy as amended by controlling change orders.

4.     Notwithstanding Fluor's prompt response three (3) days later advising Duke Energy that it was reviewing the demand, requesting Duke Energy to provide an explanation of and support for the claimed costs for Fluor's review, and promising that Fluor would make known its position promptly, Duke Energy rejected Fluor's requests and, instead, drew down the Letter of Credit without any prior notice to Fluor as aforedescribed.

5.     Duke Energy's entitlement to the claimed delay costs were expressly limited by the terms and conditions of the Agreement and relevant change orders executed thereunder, and Duke's unsubstantiated and unsupported invoice did not satisfy those terms and conditions.

6.     By wrongfully and prematurely drawing down the Letter of Credit, Duke Energy acted in an unfair, deceptive and unconscionable manner; exercised the discretion granted it under the Parties' contract in an unreasonable manner; breached the Agreement and the implied covenant of good faith and fair dealing contained therein; and acted in bad faith to intentionally deprive Fluor of its express contractual rights.

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

7.       This is also an action to recover from Duke Energy progress payments in an amount exceeding $34,403,660 due and owing to Fluor for work performed on the Project, which Duke Energy has wrongfully withheld under the same deceitful guise used to draw down the Letter of Credit.

8.       As a direct and proximate result of Duke Energy's actions, Fluor has been damaged in an amount of approximately $101,403,660, not including interest, the precise amount to be proven at trial.

## PARTIES

9.       Plaintiff Fluor is, and was at all relevant times mentioned herein, an engineering, procurement, construction, maintenance and project management company engaged in the design and construction of large infrastructure projects around the world.  Fluor is organized and existing under the laws of the State of California and has a place of business in Greenville, South Carolina.  Fluor is and was, at all times mentioned herein, authorized to do business in the State of Florida and properly licensed as a general contractor in that State.

10.      Upon information and belief, Defendant Duke Energy is, and at all times mentioned herein, was an electric power holding company engaged in providing electricity to users in Florida and other areas as well as an engineering, procurement, fabrication and commissioning company engaged in the design, construction and commissioning of its own power plants.  Duke Energy is a Florida limited liability company having its principal place of business in St. Petersburg, Florida.

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the citizenship of Fluor is diverse from that of Duke Energy, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue in this jurisdiction is proper in that the contract between Fluor and Duke Energy, which is the subject of this action, provides for venue in the United States District Court for the Middle District of Florida.  In addition, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Florida, and venue is also proper under 28 U.S.C. § 1391(b)(1) because defendant resides in Florida.

## FACTUAL BACKGROUND

### The Agreement

13.     On or about October 15, 2014, Fluor entered into the Agreement with Duke Energy Florida, Inc., pursuant to which Fluor agreed to engineer, procure and construct certain aspects of the Project in consideration of the payment of a lump sum price of $566,570,000 (the "Contract Price").

14.     Thereafter, Duke Energy Florida, Inc., according to its Articles of Conversion for "Other Business Entity" dated July 31, 2015, converted into a Florida limited liability company.

15.     Said Contract Price was to be paid by Duke Energy in accordance with invoices submitted by Fluor upon the completion of so-called payment milestones, as defined in the Agreement.

16.     The Project involved the design, procurement, construction and commissioning of a combined cycle power plant, which includes power generation units that utilize a heat recovery

4

steam generator ("HRSG"), to capture the exhaust heat from the gas-fired combustion turbine generators ("CTGs") in order to produce steam for additional power generation. The Project involved the construction of two so-called power blocks known as Power Block 1 and Power Block 2.

17.    Fluor received a Full Notice to Proceed from Duke Energy on or about October 5, 2015, and immediately thereafter commenced the construction phase of the Agreement. Fluor was obligated to prosecute completion of construction in accordance with the Baseline Schedule for the Project, which provided for a Guaranteed Mechanical Completion date of December 1, 2017 for Power Block 1 and April 2, 2018 for Power Block 2. The Agreement also provided for a Guaranteed Substantial Completion Date of May 1, 2018 for Power Block 1 and October 1, 2018 for Power Block 2.

18.    The Baseline Schedule for the Agreement also set forth specified dates for the completion by Fluor of certain key milestones described as Group Turnover Packages, which included specific systems essential to the proper operation of the Project.

19.    The Agreement further provided for the assessment of liquidated delay damages in specific amounts for each day Fluor failed to meet the dates specified in the Agreement for the Guaranteed Mechanical Completion Date and the Guaranteed Substantial Completion Date.

20.    Section 10.5 of the Agreement provided that Fluor would be entitled to a Change Order adjustment to the Contract Price and Baseline Schedule, as applicable, in the event Fluor experienced any increase in direct field costs to perform its work or any delay in completion of any critical path items in the Baseline Schedule due to: (a) Duke Energy's breach of the Agreement; (b) material modifications to the design requirements made during performance of the work and supplied by Duke Energy to Fluor; (c) a delay in the delivery of any Owner

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

Equipment or a delay resulting from any Owner Equipment; or (d) any actions or conditions for which Fluor is expressly entitled to request a Change under the Agreement.

21.     Pursuant to Section 10.1 of the Agreement, Duke Energy had the right to order changes in the scope of work or terms and conditions of the Agreement without invalidating it. The process and protocol developed and adopted by the Parties provided that, if Fluor sought such a Change Order, including one to modify the Contract Price or Baseline Schedule, Fluor would submit a Project Action Request ("PAR") setting forth the facts giving rise to the requested change order and the modification sought.  In the event that the terms and pricing for a particular PAR were agreed by the Parties, that PAR would then be incorporated into a Change Order to the Agreement.

22.     The Agreement further provided at Section 22.2 that the Contractor would be in default of its obligations for failure "to pay or cause to be paid any amount that is not subject to a good faith dispute . . . within thirty (30) days after receipt of written notice that such amounts are past due."  In such event, however, that Section of the Agreement further provides the Contractor has thirty (30) days after written notice of such default to cure the default.

23.     The Agreement also contained at Section 25.1 a dispute resolution process provision intended "to promote the highest quality working relationship" between the Parties by setting forth steps to "be responsibly and openly pursued in an effort to resolve any dispute under or arising out of [the] Agreement . . . before resorting to litigation, except as may be necessary to preserve any rights or the status quo" (the "Dispute Resolution Process").

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

24.     More particularly, the Dispute Resolution Process required all disputes to be made in a written notice (the "Dispute Engagement Notice") in order to initiate the process, at which point the Parties were required to "discuss the issues, present reasonably requested documentation and attempt to reach a settlement [at the Project level] agreeable to both parties." In the event that a dispute could not be resolved at the Project level within fifteen (15) days after the receipt of the Dispute Engagement Notice, the dispute would be "escalated to an executive of each Party who has authority to settle the Dispute." In the event that the Dispute could not be resolved at the Executive Level within fifteen (15) days, then -- but only then -- "either Party may pursue any rights or remedies available pursuant to [the] Agreement," which would be litigation in this Court.

25.     Article 2.3(k) of the Agreement required Duke Energy to exercise "reasonable judgment . . . to the extent of judging compliance with the terms of [the] Agreement."

**The Project Letter of Credit**

26.     Pursuant to Section 17.2 and Exhibit I-2 of the Agreement, Fluor provided Duke Energy with a standby Letter of Credit No. 04132334 (the "Letter of Credit"), with Duke Energy designated as the beneficiary, in an initial amount equal to 10% of the Contract Price, which amount could be amended as provided in the Agreement. The initial amount of the Letter of Credit was $57,000,000, which was subsequently increased to $67,000,000.

27.     The Letter of Credit provided by its terms that, upon certification to the bank issuing said Letter of Credit by Duke Energy that Fluor "pursuant to the terms and provisions of that certain engineering, procurement and construction agreement . . . has failed to fulfill certain of its obligations under the Agreement," then Duke Energy would be entitled to draw the face amount of the Letter of Credit in whole or in part.

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

28.     The Letter of Credit expressly provided that it would be governed and construed in accordance with the laws of New York.

**Change Order Nos. 51, 59 and 73**

29.     Subsequent to the execution of the Agreement, Fluor and Duke Energy entered into Change Order No. 51 dated November 14, 2017, pursuant to which the Guaranteed Mechanical Completion Dates for Power Blocks 1 and 2 were revised to March 1, 2018 and May 1, 2018, respectively.  Similarly, the Guaranteed Substantial Completion Dates for Power Blocks 1 and 2 were revised to August 1, 2018 and November 1, 2018, respectively.  Change Order No. 51 also provided that the per diem liquidated delay damages set forth in the Agreement would be applied in accordance with the revised completion dates.  In addition, Change Order No. 51 increased the Contract Price by $58,100,000 as full and complete adjustment for all claims arising out of any condition known to Fluor and Duke Energy as of the date of Change Order No. 51.

30.     Change Order No. 51 was based upon the financial and schedule impacts of PARs and Proposed Change Orders ("PCOs") previously submitted by Fluor and numbered 0 through 216.  Change Order No. 51 also contained express waiver provisions, whereby Fluor and Duke Energy each expressly and unequivocally waived all liability of whatever nature:  (a) arising before the date of the Change Order; or (b) arising out of any condition known or should have been known to Fluor or Duke Energy as of the date of the Change Order.  Moreover, Change Order No. 51 expressly provided that neither party would seek -- and each agreed that it was not entitled to -- any compensation or schedule relief whatsoever in connection with the facts and circumstances that form the basis of PARs or PCOs numbered 0 through 216 and that each party waived its right to use PARs numbered 0 through 216 (the "Change Order 51 PARs") as support

for any claims.

31.　　Fluor and Duke Energy thereafter entered into Change Order No. 59 dated April 6, 2018, which further extended the Guaranteed Mechanical Completion Dates for Power Blocks 1 and 2 to March 19, 2018 and May 19, 2018, respectively. Change Order No. 59 also extended the Substantial Completion Dates for Power Blocks 1 and 2 to August 19, 2018 and November 19, 2018, respectively. Change Order No. 59 reduced the Contract Price by the sum of $2,127,299 as a result of the resolution of a series of add and deduct PARs claimed by the parties as of that date.

32.　　Change Order No. 59 provided, *inter alia*, that Fluor and Duke Energy expressly and unequivocally waived all liability of whatever nature arising: (a) before the date of the Change Order; or (b) any condition known or should have been known to Fluor and Duke Energy as of the date of the Change Order. The Parties also agreed that they were not entitled to any compensation or schedule relief in connection with the facts and circumstances surrounding the PARs and PCOs that were the subject of Change Order No. 59 (the "Change Order 59 PARs").

33.　　Thereafter, Fluor and Duke Energy entered into Change Order No. 73 on July 9, 2018, which provided, *inter alia*, that Duke Energy would not assess liquidated delay damages against Fluor, as provided in the Agreement, if the so-called In Service dates for Power Blocks 1 and 2 occurred on or before December 31, 2018. In such event, however, Fluor would be liable to Duke Energy for "all additional costs incurred by Duke Energy due to the failure to meet the agreed milestone dates previously set forth in the Agreement and amended by Change Order No. 59."

34.　　Change Order No. 73 further provided that Fluor shall have no liability for such

9

costs incurred by Duke Energy as a result of Duke Energy's "gross negligence, willful misconduct, or force majeure events" under the Agreement.

35.     Change Order No. 73 also provided that Duke would pay Fluor an "incentive payment" of $33,000,000 if the In Service Dates for Power Blocks 1 and 2 occurred on or before November 7, 2018 and December 15, 2018, respectively.

**COUNT ONE**
**Wrongful Draw On Standby Letter of Credit**

36.     Paragraphs 1 through 35 inclusive above are hereby incorporated in Count One as if fully set forth herein.

37.     The actual In Service Dates achieved by Fluor for Power Blocks 1 and 2 were October 26, 2018 and November 24, 2018, respectively, such that the provisions of Change Order No. 73 took effect to eliminate Fluor's liability for the liquidated delay damages under the Agreement and limit Duke Energy's recovery to any actual additional costs incurred due to Fluor's failure to meet the agreed milestone dates set forth in the Agreement as amended by Change Order No. 59.

38.     Because Fluor had failed, however, to achieve the Guaranteed Mechanical Completion Dates set forth in Change Order No. 59 and was late by approximately 6 months for each Power Block, Duke Energy was entitled under the terms of Change Order No. 73 to claim its "additional costs" incurred as a result of that delay -- in lieu of the liquidated delay damages provided in the Agreement.

39.     On Friday, December 21, 2018, Duke Energy submitted to Fluor a so-called Interim Payment Demand under Change Order No. 73 for which Duke Energy claimed were its "additional costs incurred by Duke Energy due to the failure to meet the agreed milestone dates previously set forth in the Agreement and amended by Change Order No. 59." Attached was a

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

single page, one line-item invoice for $108,944,580 (the "$109 Million Invoice"). A copy of that letter and invoice is attached hereto as **Exhibit A**.

40.     Neither the $109 Million Invoice nor the cover letter provided any explanation or breakdown of the amount claimed, any detail as to what comprised that sum, or any itemization of or supporting documentation to confirm the claimed costs were, in fact, actual "additional costs" incurred by Duke Energy in accordance with the terms of the Agreement as amended by Change Order Nos. 51, 59 and 73. The $109 Million Invoice contained only the single sum of $108,944,580, which, on its face, Fluor considered to be patently unreasonable, unrealistic, exaggerated and inflated.

41.     As a result of Duke Energy's failure to provide any detail or supporting documentation, Fluor was deprived of any opportunity or ability to analyze and evaluate what Duke Energy claimed were its "additional costs incurred [by Fluor's] failure to meet the agreed milestone dates" set forth in Change Order No. 59, to determine whether any such costs were, in fact, actually incurred as a result of the delay in achieving the Guaranteed Mechanical Completion Dates, as required, and, if so, whether they had been waived and released in whole or in part by Duke Energy under the waiver and release provisions of Change Order Nos. 51 and 59; or whether the claimed costs or any part thereof were a result of Duke Energy's gross negligence, willful misconduct or force majeure events, which, under the express terms of Change Order No. 73, precluded their recovery by Duke Energy.

42.     Duke Energy's letter transmitting the $109 Million Invoice also wrongly claimed that payment was due within fifteen (15) days, or on January 7, 2019, citing an inapplicable provision of the Agreement, but neither the $109 Million Invoice nor the Duke Energy letter transmitting the $109 Million Invoice stated or implied that Duke Energy intended to draw down

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

the Letter of Credit if Fluor did not issue payment by January 7, 2019.

43. Duke Energy's claim for payment of a change order in the manner and form as aforedescribed was contrary to the course of conduct and dealings between the Parties throughout the performance of the Agreement.

44. It was Fluor's intention, upon receiving the supporting documentation for the claimed costs it had requested, to analyze and evaluate that information and, if it believed that any part of the $109 Million Invoice was inappropriate, unsupported, invalid, barred by previous waiver or release, claimed in bad faith, the result of Duke Energy's gross negligence, willful misconduct, or force majeure, or otherwise not recoverable under Change Order No. 73, then Fluor would exercise its absolute contractual right under Article 25 (Dispute Resolution), which was never waived or amended by change order or otherwise, by issuing a Dispute Engagement Notice and initiating the process described therein. Under the terms of the Dispute Resolution Process, Fluor had the express right, *inter alia*, to request and obtain from Duke Energy "reasonably requested documentation," so that even if Duke Energy continued to fail and refuse to provide supporting documentation for the $109 Million Invoice, Fluor could obtain it then.

45. In a further attempt to conceal and advance its plan to wrongly draw down the Letter of Credit immediately upon the expiration of the 15-day period for payment that it had imposed, Duke Energy stated in its cover letter transmitting the $109 Million Invoice that its "demand is not, and should not be construed as, a Dispute Engagement Notice under Section 25.1(a) of the Agreement."

46. The following Monday, December 24, 2018, Fluor emailed Duke Energy to acknowledge receipt of the December 21 letter and invoice. Fluor also stated that it was reviewing the letter and invoice and that, due to the holiday schedule, it would provide a

response to Duke Energy the week of January 6. Fluor further stated in its response that it assumed Duke Energy would provide Fluor with the backup for the claimed costs for Fluor's review during the interim.

47.     On Friday, January 3, 2019, Duke Energy submitted to Fluor a five-page narrative with attachments entitled "Summary of Supporting Data For Costs Owed By Fluor Under Change Order No. CO-73," (the "Duke Cost Summary"). The Duke Cost Summary provided very little additional explanation, detail or documentation in support of the $109 Million Invoice and certainly not enough to allow Fluor to make any meaningful and reasonable evaluation of the $109 Million Invoice. For example, Attachment 2 was entitled "Owner Labor Summary" and consisted of a mere nine (9) line items totaling $52,381,604, with nothing more to support that number, such as payroll records, or the identity of the personnel involved, or when the costs were incurred, or why. Duke Energy took the unreasonable and unsupportable position in the Duke Cost Summary that "Fluor has no contractual or other right to receive, audit, review, or dispute information concerning the costs due to Duke Energy under Change Order - 73," but nothing in Change Order No. 73 imposes any such restriction on Fluor's rights. Fluor was left to accept Duke Energy's representations that the alleged costs totaling $108,944,580 were legitimate and proper costs owed by Fluor under Change Order No. 73.

48.     The Duke Cost Summary did not state, nor did Duke Energy otherwise reveal to Fluor, that it intended to draw down the Letter of Credit four days later on Tuesday, January 8, 2019 if Fluor did not pay the $109 Million Invoice by Monday, January 7, 2019 as Duke Energy had demanded.

49.     Upon receiving the Duke Energy Cost Summary on January 4, 2019, Fluor justifiably and reasonably assumed that it would have a reasonable amount of time to review and

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

analyze the information submitted therein -- however limited and opaque it was; that it would eventually receive more detailed supporting information in the form of contemporaneous business and accounting records to support the $109 million claimed by Duke Energy; that Duke Energy would exercise its authority under the Agreement in a reasonable manner; that the Parties would, in good faith, continue their discussions related to this matter during the week of January 7, 2019 as Fluor stated in its December 24, 2018 response to Duke Energy; and that, if after that process, Fluor deemed the $109 Million Invoice subject to good faith disputes, Fluor would issue a Dispute Engagement Notice pursuant to Section 25.1 of the Agreement and then proceed in accordance with the Dispute Resolution Process to resolve the dispute over Duke Energy's claim for $109 million.

50.    Notwithstanding Fluor's reasonable and justifiable expectations that it would be afforded a fair opportunity under the terms of the Agreement to respond substantively to Duke Energy's demand for payment as aforedescribed, Duke Energy deprived Fluor of its contractual right to dispute the $109 Million Invoice and proceed in accordance with the Dispute Resolution Process by drawing down, without notice, the Letter of Credit for its full amount of $67,000,000 on January 8, 2019.

51.    In so doing, Duke Energy falsely and wrongly certified to Fluor's bank issuing the Letter of Credit that Fluor "has failed to fulfill certain of its obligations under the Agreement and [Duke Energy] is entitled to the draw of funds . . ."

52.    Even assuming the $109 Million Invoice was not subject to a good faith dispute, which it was, at no time before Duke Energy wrongly drew down the Letter of Credit, as aforedescribed, did it: (a) provide Fluor thirty (30) days for payment; (b) deem Fluor in default of its obligations for failure to pay within that time; or (c) provide Fluor thirty (30) days to cure

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

such default, all as required by Section 22.2 of the Agreement.

53.     At the time of Duke Energy's draw down, the Letter of Credit was not in danger of expiration or reduction in amount and had been amended to extend its effective date to October 1, 2020.

54.     As a result of Duke Energy's wrongful draw down of the Letter of Credit, as aforedescribed, Fluor was obligated under the terms of its credit facility with the bank issuing the Letter of Credit to immediately reimburse such bank the full amount of $67 million drawn by Duke, which obligation Fluor satisfied in full on January 8, 2019.

55.     Duke Energy's draw down of the Letter of Credit was wrongful, premature, in bad faith, deceitful, unreasonable and in material breach of the Agreement.

56.     By wrongly drawing on the Letter of Credit without any prior notice to Fluor, Duke Energy intentionally circumvented, nullified and vitiated the Agreement's default process and dispute resolution process and deprived Fluor of its rights under those provisions.

57.     Pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. § 2201, *et seq.*, a justifiable controversy exists between Fluor and Duke Energy as to whether Duke Energy had the lawful right to draw down the Letter of Credit in the manner it did.

58.     This Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §§ 1331 and 2201.

59.     Said dispute is an actual cause or controversy for the purposes of the Federal Declaratory Judgment Act, and this court is empowered to render a declaratory judgment rendering the rights of the parties in said dispute pursuant to 28 U.S.C. §§ 2201 and 2202.

60.     Accordingly, Fluor is entitled to an order pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Duke Energy's draw down of the Letter

15

of Credit was wrongful and in breach of the Agreement and applicable Change Orders, and Fluor is, therefore, entitled to a refund in full of said $67,000,000 plus interest and costs.

## COUNT TWO
### Breach of Warranty Pursuant to N.Y. UCC § 5-110(a)(2) and Fla. Stat. § 675.110(1)(b)

61.     Paragraphs 1 through 60 inclusive above are hereby incorporated in Count Two as if fully set forth herein.

62.     In drawing down the Letter of Credit, Duke Energy warranted to Fluor that said draw down did not violate any provision of the Agreement.

63.     Duke Energy's draw down of the Letter of Credit did, in fact, violate its express and implied obligations under the Agreement, all as aforedescribed.

64.     Duke Energy, therefore, breached the warranty provided to Fluor under the applicable provisions of the Uniform Commercial Code as adopted by the State of New York and the State of Florida.

## COUNT THREE
### Conversion

65.     Paragraphs 1 through 64 inclusive above are hereby incorporated in Count Three as if fully set forth herein.

66.     On January 15, 2019, Fluor demanded, in writing, from Duke Energy "immediate repayment of the Letter of Credit Funds. . . ."

67.     Duke Energy has failed and refused to comply with Fluor's demand, replying in writing on January 18, 2019 that it did "not intend to make repayment of the Letter of Credit Funds. . . ."

68.     By drawing down the Letter of Credit in the manner described above, Duke Energy wrongly asserted dominion over Fluor's property inconsistent with Fluor's ownership

16

thereof and deprived Fluor of said funds.

69. The Letter of Credit funds were specific and identifiable funds.

70. Fluor had a right of possession to the Letter of Credit funds.

71. In so doing, Duke Energy wrongly converted $67 million belonging to Fluor, all to Fluor's great financial harm and detriment.

## COUNT FOUR
### Civil Theft

72. Paragraphs 1 through 71 inclusive above are hereby incorporated in Count Four as if fully set forth herein.

73. In drawing down the Letter of Credit in the manner described above, Duke Energy knowingly and permanently obtained Fluor's property with a felonious intent to deprive Fluor of its right to that $67 million and to appropriate Fluor's property for Duke Energy's own use, all in violation of Fla. Stat. § 772.11.

74. Fluor has retained the undersigned counsel and has agreed to pay its reasonable attorney's fees and costs. Fluor is entitled to recover such fees and costs pursuant to statute.

75. Duke Energy's actions as aforedescribed entitle Fluor to treble damages under Fl. Stat. § 772.11.

## COUNT FIVE
### Breach of Contract: Failure to Pay Invoices Due

76. Paragraphs 1 through 75 inclusive above are hereby incorporated in Count Five as if fully set forth herein.

77. On or about September 7, 2018, Fluor submitted, in accordance with the Agreement, Payment Invoice No. A5VI-AUG18 137 1367 in the amount of $17,510,177.

78. The time allowed under the Agreement for payment of that invoice has expired

17 at bottom

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

and Duke Energy has failed and refused to pay said invoice in full, in that $1,344,536 remains unpaid.

79.    On or about November 30, 2018, Fluor submitted, in accordance with the Agreement, Payment Invoice No. A5VI-NOV18 137 1367 in the amount of $59,124.

80.    The time allowed under the Agreement for payment of that invoice has expired and Duke Energy has failed and refused to pay any part of said invoice.

81.    On or about November 30, 2018, Fluor submitted, in accordance with the Agreement, Payment Invoice No. A5VI-NOV18 137 1367A in the amount of $33,000,000 for the incentive payment due Fluor under Change Order No. 73.

82.    The time allowed under the Agreement for payment of that invoice has expired and Duke Energy has failed and refused to pay any part of said invoice.

83.    Duke Energy has justified its failure and refusal to pay the aforedescribed Fluor invoices by wrongly claiming the right to offset the amounts due Fluor against the balance due on Duke Energy's $109 Million Invoice after the wrongful draw down of the Letter of Credit for $67 million as aforedescribed, thereby again denying Fluor its rights under the Agreement, including its rights under the Dispute Resolution Process.

84.    Duke Energy's failure and refusal to make said payments is wrongful and a material breach of the Agreement, causing Fluor great financial harm and detriment and excusing Fluor from further performance under the Agreement.

## COUNT SIX
### Breach of the Implied Covenant of Good Faith and Fair Dealing

85.    Paragraphs 1 through 84 inclusive above are hereby incorporated in Count Six as if fully set forth herein.

86.    The Agreement between Fluor and Duke Energy contained an implied covenant

18

of good faith and fair dealing and, as such, Duke Energy could not act capriciously, in bad faith, or unfairly, or otherwise contravene Fluor's reasonable contractual expectations.

87.     Under said implied covenant, Duke was further obligated not to deprive Fluor of the remedies available to Fluor under the Dispute Resolution Process of the Agreement.

88.     Duke Energy was also obligated under the express terms of the Agreement to act reasonably in exercising any discretion it had under the Agreement and Change Order Nos. 51, 59 and 73, including any assessment of costs against Fluor and affording Fluor a reasonable opportunity to evaluate and analyze the said costs and, if necessary, challenge them by invoking the Dispute Resolution Process in the Agreement.  Duke Energy breached this obligation.

89.     Duke Energy was obligated under the Agreement to act reasonably in supporting the costs claimed against Fluor in its $109 Million Invoice before exercising any remedies under the Agreement or Change Order Nos. 51, 59 or 73.  Duke Energy breached this obligation.

90.     Fluor also had the right to assert contractual and other defenses against Duke Energy's $109 Million Invoice, including, without limitation, that costs claimed by Duke Energy were: (a) incurred prior to or after the six-month delay period for which Duke Energy could recover its additional costs as provided by Change Order No. 59; (b) released and waived by Duke Energy per the express terms of Change Order Nos. 51 and 59; (c) unrelated to or not the result of Fluor's failure to meet the Mechanical Completion dates in the Agreement, as amended; (d) a result of Duke Energy's failure to mitigate damages; or (e) a result of Duke Energy's gross negligence or willful misconduct or force majeure events.

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

91.     Duke Energy also breached the Agreement by acting unreasonably in submitting a wholly unsupported invoice for $109 million; failing and refusing to provide reasonable supporting documentation and detail; depriving Fluor of its contractual dispute resolution remedies; and wrongly drawing down on the Letter of Credit based upon a totally unsubstantiated claim and wrongly certifying in support of said draw down that Fluor was in breach of the Agreement.

92.     As a result of the foregoing, Duke Energy breached the implied covenant of good faith and fair dealing in the Agreement.

93.     Duke Energy further breached the implied covenant of good faith and fair dealing by deceitfully and deceptively failing to inform Fluor that Duke Energy had already decided at least as early as December 21, 2018, that it would draw down on the $67 million Letter of Credit without giving Fluor a reasonable opportunity to evaluate and, if necessary, challenge the $109 Million Invoice.

94.     Duke Energy's breach of the implied covenant of good faith and fair dealing as aforedescribed has been to Fluor's great financial harm and detriment.

## COUNT SEVEN
### Violation of Florida Deceptive And Unfair Trade Practices Act

95.     Paragraphs 1 through 94 inclusive above are hereby incorporated in Count Seven as if fully set forth herein.

96.     At all times relevant hereto, Fluor and Duke Energy were engaged in trade or commerce in the State of Florida including the buying and selling of goods and services.

97.     Duke Energy's conduct, as aforedescribed, deceived Fluor into not taking action to immediately invoke the Dispute Resolution Process under the Agreement and to otherwise enjoin Duke Energy from drawing on the Letter of Credit prior to resolution of Duke Energy's

claim for $109 million and unfairly deprived Fluor of its rights under the default notice and cure provisions of the Agreement.

98.     At all relevant times Fluor acted reasonably under the circumstances.

99.     The foregoing acts and practices of Duke Energy were unfair, unscrupulous and deceptive under the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Sec. 5.01.204(1)).

100.    Said acts and practices of Duke Energy caused Fluor to suffer actual damages proximately caused by Duke Energy's conduct as aforedescribed.

101.    Fluor has retained the undersigned counsel and has agreed to pay its reasonable attorney's fees and costs.  Fluor is entitled to recover such fees and costs pursuant to statute.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered in its favor against Defendant for: (1) a declaratory judgment that Defendant's draw down of the standby Letter of Credit was wrongful and that those funds be returned to Fluor; (2) monetary damages in an amount to be established at trial; (3) legal fees and costs pursuant to N.Y. UCC § 5-110(a)(2) and Fla. Stat. **§** 675.110; (4) treble damages and legal fees and costs pursuant to Fla. Stat. § 772.11; (5) legal fees and costs pursuant to Fla. Stat. § 5.01.204(1); (6) prejudgment and post-judgment interest and court costs; and (7) such other and further relief as the evidence warrants and as deemed just and proper.

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2019, a true and correct copy of the foregoing **AMENDED COMPLAINT** will be served by a certified process server on Donna Moch, the contact person for the registered agent for Duke Energy Florida, LLC at the address of 1200 S. Pine Island Road, Plantation, Florida, and via facsimile (202-739-3001) on Brad Fagg, Esquire, Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, N.W., Washington, DC 20004-2541, as well as through the CM/ECF system to all registered CM/ECF recipients.

By:   _/s/_ James S. Myers _____
James S. Myers
Florida Bar Number: 64246
jmyers@mdmc-law.com
Lead Trial Counsel
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Fifth Third Center
201 East Kennedy Boulevard, Suite 815
Tampa, Florida 33602
Ph: 813-285-5520
Fax: 813-488-1183
_Attorney for Fluor Enterprises, Inc._

TGL/227296/0061/1580812v6
02/13/19-HRT/RMQ