## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

FLUOR ENTERPRISES, INC.      )
                                         )
      Plaintiff           )
                                         )     Case No. 8:19-cv-224-WFJ-AAS
                                         )
v.                                    )
                                         )
DUKE ENERGY FLORIDA, LLC, f/k/a  )
DUKE ENERGY FLORIDA, INC.      )
                                       )     APRIL 26, 2019
      Defendant.           )

## SECOND AMENDED COMPLAINT

Plaintiff, Fluor Enterprises, Inc. ("Fluor"), by and through its undersigned attorneys, hereby files this Second Amended Complaint pursuant to this Court's Order dated April 16, 2019 (Dkt. 25) and moves this Court for judgment against Defendant Duke Energy Florida, LLC, formerly known as Duke Energy Florida, Inc. ("Duke Energy"), on the following grounds:

## NATURE OF THIS ACTION

1.    This is an action for declaratory judgment and damages resulting from Duke Energy's wrongful, premature and bad faith draw down of a $67,000,000 Letter of Credit that Fluor obtained and provided to Duke Energy pursuant to a written contract dated October 15, 2014 between Fluor and Duke Energy (the "Agreement") for the engineering, procurement and construction of a Combustion Turbine Combined Cycle Electrical Generator Facility in Citrus County, Florida (the "Project").  (A copy of the Agreement, excluding the Agreement's voluminous exhibits, except for Exhibit C regarding Payment Milestones, is attached hereto as **Exhibit A**).

2.      Without any prior notification to Fluor of its intention to do so, Duke Energy wrongfully drew down said Letter of Credit on January 8, 2019 based upon an unsubstantiated payment demand contained in a simple one-page invoice to Fluor on December 21, 2018 in the amount of $108,944,580 for alleged additional costs claimed by Duke Energy arising out of delays to the completion of the Project.

3.      Said invoice was devoid of any breakdown, detail, explanation or supporting documentation in the form of contemporaneous business or accounting records from Duke Energy to verify that the amount demanded did, in fact, result from costs that Duke Energy was entitled to charge against Fluor based upon the terms of the aforedescribed contract between Fluor and Duke Energy as amended by controlling change orders.

4.      Notwithstanding Fluor's prompt response three (3) days later advising Duke Energy that it was reviewing the demand; requesting Duke Energy to provide an explanation of and support for the claimed costs for Fluor's review; and promising that Fluor would make known its position promptly, Duke Energy rejected Fluor's requests and, instead, drew down the Letter of Credit without any prior notice to Fluor as aforedescribed.

5.      Duke Energy's entitlement to the claimed delay costs were expressly limited by the terms and conditions of the Agreement and relevant change orders executed thereunder, and Duke's unsubstantiated and unsupported invoice did not satisfy those terms and conditions.

6.      By wrongfully and prematurely drawing down the Letter of Credit, Duke Energy exercised the discretion granted it under the Parties' contract in an unreasonable manner; breached the Agreement and the implied covenant of good faith and fair dealing contained therein; and acted in bad faith to intentionally deprive Fluor of its express

2

contractual rights.

7.     This is also an action to recover from Duke Energy monies due and owing Fluor for work performed on the Project under the Agreement and remaining unpaid.

8.     As a direct and proximate result of Duke Energy's breaches of contract, Fluor has been damaged in an amount no less than $100,000,000, not including interest, the precise amount to be proven at trial.

## PARTIES

9.     Plaintiff Fluor is, and was at all relevant times mentioned herein, an engineering, procurement, construction, maintenance and project management company engaged in the design and construction of large infrastructure projects around the world.  Fluor is organized and existing under the laws of the State of California and has a place of business in Greenville, South Carolina.  Fluor is and was, at all times mentioned herein, authorized to do business in the State of Florida and properly licensed as a general contractor in that State.

10.     Upon information and belief, Defendant Duke Energy is, and was at all times mentioned herein, an electric power holding company engaged in providing electricity to users in Florida and other areas as well as an engineering, procurement, fabrication and commissioning company engaged in the design, construction and commissioning of its own power plants.  Duke Energy is a Florida limited liability company having its principal place of business in St. Petersburg, Florida.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the citizenship of Fluor is diverse from that of Duke Energy, and the amount in

controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue in this jurisdiction is proper in that the contract between Fluor and Duke Energy, which is the subject of this action, provides for venue in the United States District Court for the Middle District of Florida.  In addition, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Florida, and venue is also proper under 28 U.S.C. § 1391(b)(1) because defendant resides in Florida.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS

### The Agreement

13.     On or about October 15, 2014, Fluor entered into the Agreement with Duke Energy Florida, Inc., pursuant to which Fluor agreed to engineer, procure and construct certain aspects of the Project in consideration of the payment of a lump sum price of $566,570,000 (the "Contract Price").

14.     Thereafter, Duke Energy Florida, Inc., according to its Articles of Conversion for "Other Business Entity" dated July 31, 2015, converted into a Florida limited liability company.

15.     Said Contract Price was to be paid by Duke Energy in accordance with invoices submitted by Fluor upon the achievement of so-called payment milestones, as defined in the Agreement.

16.     The Project involved the design, procurement, construction and commissioning of a combined cycle power plant, which includes power generation units that utilize a heat recovery steam generator ("HRSG"), to capture the exhaust heat from the gas-fired

4

combustion turbine generators ("CTGs") in order to produce steam for additional power generation.  The Project involved the construction of two so-called power blocks known as Power Block 1 and Power Block 2.

17.     Fluor received a Full Notice to Proceed from Duke Energy on or about October 5, 2015, and immediately thereafter commenced the construction phase of the Agreement. Fluor was obligated to prosecute completion of construction in accordance with the Baseline Schedule for the Project, which provided for a Guaranteed Mechanical Completion date of December 1, 2017 for Power Block 1 and April 2, 2018 for Power Block 2.  The Agreement also provided for a Guaranteed Substantial Completion Date of May 1, 2018 for Power Block 1 and October 1, 2018 for Power Block 2.

18.     The Baseline Schedule for the Agreement also set forth specified dates for the completion by Fluor of certain key milestones described as Group Turnover Packages, which included specific systems essential to the proper operation of the Project.

19.     The Agreement further provided for the assessment of liquidated delay damages in specific amounts for each day Fluor failed to meet the dates specified in the Agreement for the Guaranteed Mechanical Completion Date and the Guaranteed Substantial Completion Date.

20.     Section 10.5 of the Agreement provided that Fluor would be entitled to a Change Order adjustment to the Contract Price and Baseline Schedule, as applicable, in the event Fluor experienced any increase in direct field costs to perform its work or any delay in completion of any critical path items in the Baseline Schedule due to:  (a) Duke Energy's breach of the Agreement; (b) material modifications to the design requirements made during performance of the work and supplied by Duke Energy to Fluor; (c) a delay in the delivery of

any Owner Equipment or a delay resulting from any Owner Equipment; or (d) any actions or conditions for which Fluor is expressly entitled to request a Change Order under the Agreement.

21.     Pursuant to Section 10.1 of the Agreement, Duke Energy had the right to order changes in the scope of work or terms and conditions of the Agreement without invalidating it. The process and protocol developed and adopted by the Parties provided that, if Fluor sought such a Change Order, including one to modify the Contract Price or Baseline Schedule, Fluor would submit a Project Action Request ("PAR") setting forth the facts giving rise to the requested Change Order and the modification sought.  In the event that the terms and pricing for a particular PAR were agreed by the Parties, that PAR would then be incorporated into a Change Order to the Agreement.

22.     The Agreement further provided at Section 22.2 that the Contractor would be in default of its obligations for failure "to pay or cause to be paid any amount that is not subject to a good faith dispute . . . within thirty (30) days after receipt of written notice that such amounts are past due."

23.     The Agreement also contained at Section 25.1 a dispute resolution process provision intended "to promote the highest quality working relationship" between the Parties by setting forth steps to "be responsively and openly pursued in an effort to resolve any dispute under or arising out of [the] Agreement . . . before resorting to litigation, except as may be necessary to preserve any rights or the status quo" (the "Dispute Resolution Process").

24.     More particularly, the Dispute Resolution Process required all disputes to be set forth in a written notice (the "Dispute Engagement Notice") in order to initiate the process, at

which point the Parties were required to "discuss the issues, present reasonably requested documentation and attempt to reach a settlement [at the Project level] agreeable to both parties." In the event that a dispute could not be resolved at the Project level within fifteen (15) days after the receipt of the Dispute Engagement Notice, the dispute would be "escalated to an executive of each Party who has authority to settle the Dispute." In the event that the Dispute could not be resolved at the Executive Level within fifteen (15) days, then -- but only then -- "either Party may pursue any rights or remedies available pursuant to [the] Agreement," which would be litigation in this Court.

25.     Article 2.3(k) of the Agreement required Duke Energy to exercise "reasonable judgment . . . to the extent of judging compliance with the terms of [the] Agreement."

**The Project Letter of Credit**

26.     Pursuant to Section 17.2 and Exhibit I-2 of the Agreement, Fluor provided Duke Energy with a standby Letter of Credit No. 04132334 (the "Letter of Credit"), with Duke Energy designated as the beneficiary, in an initial amount equal to 10% of the Contract Price, which amount could be amended as provided in the Agreement. The initial amount of the Letter of Credit was $57,000,000, which was subsequently increased to $67,000,000. (A copy of the Letter of Credit is attached hereto as **Exhibit B**).

27.     Pursuant to Article 17.2 of the Agreement, the Letter of Credit was to be a source of funds for claims by Duke Energy under the Agreement.

28.     The Letter of Credit provided by its terms that, upon certification to the bank issuing said Letter of Credit by Duke Energy that Fluor "pursuant to the terms and provisions of that certain engineering, procurement and construction agreement . . . has failed to fulfill

certain of its obligations under the Agreement," then Duke Energy would be entitled to draw down the Letter of Credit in whole or in part.

29.     The Letter of Credit expressly provided that it would be governed and construed in accordance with the laws of New York.

**Change Order Nos. 51, 59 and 73**

30.     Subsequent to the execution of the Agreement, Fluor and Duke Energy entered into Change Order No. 51 dated November 14, 2017, pursuant to which the Guaranteed Mechanical Completion Dates for Power Blocks 1 and 2 were revised to March 1, 2018 and May 1, 2018, respectively.  Similarly, the Guaranteed Substantial Completion Dates for Power Blocks 1 and 2 were revised to August 1, 2018 and November 1, 2018, respectively.  Change Order No. 51 also provided that the per diem liquidated delay damages set forth in the Agreement would be applied in accordance with the revised completion dates.  In addition, Change Order No. 51 increased the Contract Price by $58,100,000 as full and complete adjustment for all claims arising out of any condition known to Fluor and Duke Energy as of the date of Change Order No. 51. (A copy of Change Order No. 51 is attached hereto as **Exhibit C**).

31.     Change Order No. 51 was based upon the financial and schedule impacts of PARs and Proposed Change Orders ("PCOs") previously submitted by Fluor and numbered 0 through 216.  Change Order No. 51 also contained express waiver provisions, whereby Fluor and Duke Energy each expressly and unequivocally waived all liability of whatever nature:  (a) arising before the date of the Change Order; or (b) arising out of any condition known or which should have been known to Fluor or Duke Energy as of the date of the Change Order.

8

Moreover, Change Order No. 51 expressly provided that neither party would seek -- and each agreed that it was not entitled to -- any other compensation or schedule relief whatsoever in connection with the facts and circumstances that form the basis of PARs or PCOs numbered 0 through 216 and that each party waived its right to use PARs numbered 0 through 216 (the "Change Order 51 PARs") as support for any claims.

32.     Fluor and Duke Energy thereafter entered into Change Order No. 59 dated April 6, 2018, which further extended the Guaranteed Mechanical Completion Dates for Power Blocks 1 and 2 to March 19, 2018 and May 19, 2018, respectively.  Change Order No. 59 also extended the Substantial Completion Dates for Power Blocks 1 and 2 to August 19, 2018 and November 19, 2018, respectively.  Change Order No. 59 reduced the Contract Price by the sum of $2,127,299 as a result of the resolution of a series of add and deduct PARs claimed by the parties as of that date.  (A copy of Change order 59 is attached hereto as **Exhibit D**).

33.     Change Order No. 59 provided, *inter alia*, that Fluor and Duke Energy expressly and unequivocally waived all liability of whatever nature arising:  (a) before the date of the Change Order; or (b) any condition known or should have been known to Fluor and Duke Energy as of the date of the Change Order.  The Parties also agreed that they were not entitled to any other compensation or schedule relief in connection with the facts and circumstances surrounding the PARs and PCOs that were the subject of Change Order No. 59 (the "Change Order 59 PARs").

34.     Thereafter, Fluor and Duke Energy entered into Change Order No. 73 on July 9, 2018, which provided, *inter alia*, that Duke Energy would not assess liquidated delay damages against Fluor, as provided in the Agreement, if the so-called In Service dates for

9

Power Blocks 1 and 2 occurred on or before December 31, 2018.  (A copy of Change Order

73 is attached hereto as **Exhibit E**).  In such event, however, Fluor would be liable to Duke

Energy for "all additional costs incurred by Duke Energy due to the failure to meet the agreed

milestone dates previously set forth in the Agreement and amended by Change Order No. 59."

35.     Change Order No. 73 further provided that Fluor shall have no liability for such

costs incurred by Duke Energy as a result of Duke Energy's "gross negligence, willful

misconduct, or force majeure events" under the Agreement.

36.     Change Order No. 73 also provided that Duke would pay Fluor an "incentive

payment" of $33,000,000 if the In Service Dates for Power Blocks 1 and 2 occurred on or

before November 7, 2018 and December 15, 2018, respectively.

**COUNT ONE: Breach of Contract -- Wrongful Draw On Standby Letter of Credit**

37.     Paragraphs 1-6 and 9-36 regarding the nature of this action, the parties,

jurisdiction and venue, and background facts above are hereby re-alleged in Count One as if

fully set forth herein.

38.     The actual In Service Dates achieved by Fluor for Power Blocks 1 and 2 were

October 26, 2018 and November 24, 2018, respectively, such that the provisions of Change

Order No. 73 took effect to eliminate Fluor's liability for the liquidated delay damages under

the Agreement.

39.     Because Fluor had failed, however, to achieve the Guaranteed Mechanical

Completion Dates set forth in Change Order No. 59 and was late by approximately 6 months

for each Power Block, Duke Energy was entitled, under the terms of Change Order No. 73, to

claim its actual "additional costs" incurred as a result of that delay -- in lieu of the liquidated

TGL/227296/0061/1580812v9
04/26/19-HRT/RMQ

delay damages provided in the Agreement.

40.     On Friday, December 21, 2018, Duke Energy submitted to Fluor a so-called Interim Payment Demand (the "Interim Payment Demand") under Change Order No. 73 for what Duke Energy claimed were its "additional costs incurred by Duke Energy due to the failure to meet the agreed milestone dates previously set forth in the Agreement and amended by Change Order No. 59." Attached was a single page, one line-item invoice for $108,944,580 (the "$109 Million Invoice"). (A copy of that letter and invoice is attached hereto as **Exhibit F)**.

41.     Neither the $109 Million Invoice nor the cover letter provided any explanation or breakdown of the amount claimed, any detail as to what comprised that sum, or any itemization of or supporting documentation to confirm the claimed costs were, in fact, actual "additional costs" incurred by Duke Energy in accordance with the terms of the Agreement as amended by Change Order Nos. 51, 59 and 73. The $109 Million Invoice contained only the single sum of $108,944,580, which, on its face, Fluor considered to be patently unreasonable, unrealistic, exaggerated and inflated.

42.     As a result of Duke Energy's failure to provide any detail or supporting documentation, Fluor was deprived of any opportunity or ability to analyze and evaluate what Duke Energy claimed were its "additional costs incurred [by Fluor's] failure to meet the agreed milestone dates" set forth in Change Order No. 59, to determine whether any such costs were, in fact, actually incurred as a result of the delay in achieving the Guaranteed Mechanical Completion Dates, as required, and, if so, whether they had been waived and released in whole or in part by Duke Energy under the waiver and release provisions of

11

Change Order Nos. 51 and 59; or whether the claimed costs or any part thereof were a result of Duke Energy's gross negligence, willful misconduct or force majeure events, which, under the express terms of Change Order No. 73, precluded their recovery by Duke Energy.

43.     Duke Energy's letter transmitting the $109 Million Invoice also wrongly claimed that payment was due within fifteen (15) days, or on January 7, 2019, citing an inapplicable provision of the Agreement.  Neither the $109 Million Invoice, nor the Duke Energy letter transmitting the $109 Million Invoice, stated or implied that Duke Energy intended to draw down the Letter of Credit if Fluor did not issue payment by January 7, 2019.

44.     Duke Energy's claim for payment under a change order in the manner and form as aforedescribed was contrary to the course of conduct and dealings between the Parties throughout the performance of the Agreement.

45.     It was Fluor's intention, upon receiving the supporting documentation for the claimed costs it had requested, to analyze and evaluate that information and, if it believed that any part of the $109 Million Invoice was inappropriate, unsupported, invalid, barred by previous waiver or release, claimed in bad faith, the result of Duke Energy's gross negligence, willful misconduct, or force majeure, or otherwise not recoverable under Change Order No. 73, then Fluor would exercise its absolute contractual right under Article 25 (Dispute Resolution), which was never waived or amended by change order or otherwise, by issuing a Dispute Engagement Notice and initiating the process described therein.  Under the terms of the Dispute Resolution Process, Fluor had the express right, *inter alia*, to request and obtain from Duke Energy "reasonably requested documentation," so that even if Duke Energy continued to fail and refuse to provide supporting documentation for the $109 Million Invoice,

Fluor could obtain it then.

46.     In a further attempt to conceal and advance its plan to wrongly draw down the Letter of Credit immediately upon the expiration of the 15-day period for payment that it had unilaterally imposed, Duke Energy stated in its cover letter transmitting the $109 Million Invoice that its "demand is not, and should not be construed as, a Dispute Engagement Notice under Section 25.1(a) of the Agreement."

47.     The following Monday, December 24, 2018, Fluor emailed Duke Energy to acknowledge receipt of the December 21 letter and invoice.  Fluor also stated that it was reviewing the letter and invoice and that, due to the holiday schedule, it would provide a response to Duke Energy the week of January 6.  Fluor further stated in its response that it assumed Duke Energy would provide Fluor with the backup for the claimed costs for Fluor's review during the interim.  (A copy of that email is attached hereto as **Exhibit G**.)

48.     On Friday, January 3, 2019, Duke Energy submitted to Fluor a five-page narrative with attachments entitled "Summary of Supporting Data For Costs Owed By Fluor Under Change Order No. CO-73," (the "Duke Cost Summary").  (A copy of the Duke Cost Summary is attached hereto as **Exhibit H).**  The Duke Cost Summary provided very little additional explanation, detail or documentation in support of the $109 Million Invoice and certainly not enough to allow Fluor to make any meaningful and reasonable evaluation of the $109 Million Invoice.  For example, Attachment 2 was entitled "Owner Labor Summary" and consisted of a mere nine (9) line items totaling $52,381,604, with nothing more to support that number, such as payroll records, or the identity of the personnel involved, or when the costs were incurred, or why.  Duke Energy took the unreasonable and unsupportable position in the

13

Duke Cost Summary that the "supplemental information is being provided on a purely voluntary basis and as a courtesy . . . [because] Fluor has no contractual or other right to receive, audit, review, or dispute information concerning the costs due to Duke Energy under Change Order – 73." In fact, nothing in Change Order No. 73 imposes any such restriction on Fluor's rights. Fluor was left to accept Duke Energy's representations that the alleged costs totaling $108,944,580 in its one-line invoice were legitimate and proper costs owed by Fluor under Change Order No. 73.

49.      The Duke Cost Summary did not state, nor did Duke Energy otherwise reveal to Fluor, that it intended to draw down the Letter of Credit four days later on Tuesday, January 8, 2019 if Fluor did not pay the $109 Million Invoice by Monday, January 7, 2019, as Duke Energy had demanded.

50.      Upon receiving the Duke Energy Cost Summary on January 4, 2019, Fluor justifiably and reasonably assumed that it would have a reasonable amount of time to review and analyze the information submitted therein -- however limited and opaque it was; that it would eventually receive more detailed information in the form of an accounting and explanation of the claimed "additional costs" and contemporaneous business and accounting records to support the $109 million claimed by Duke Energy; that Duke Energy would exercise its authority under the Agreement in a reasonable manner; that the Parties would, in good faith, continue their discussions related to this matter during the week of January 7, 2019 as Fluor stated in its December 24, 2018 response to Duke Energy; and that, if after that process, Fluor deemed the $109 Million Invoice subject to good faith disputes, Fluor would issue a Dispute Engagement Notice pursuant to Section 25.1 of the Agreement and then proceed in

14

accordance with the Dispute Resolution Process to resolve the dispute over Duke Energy's claim for $109 million.

51.     Notwithstanding Fluor's reasonable and justifiable expectations that it would be afforded a fair opportunity under the terms of the Agreement to respond substantively to Duke Energy's demand for payment as aforedescribed, Duke Energy, without notice, drew down the Letter of Credit for its full amount of $67,000,000 on January 8, 2019.

52.     In so doing, Duke Energy falsely and wrongly certified to Fluor's bank issuing the Letter of Credit that Fluor "has failed to fulfill certain of its obligations under the Agreement and [Duke Energy] is entitled to the draw of funds . . ."  (A copy of Duke Energy's draw certificate is attached hereto as **Exhibit I**.)

53.     By claiming the $109 Million Invoice was not subject to a good faith dispute, as aforedescribed, Duke Energy was obligated to provide Fluor with written notice that said amount was past due and allow thirty (30) days for payment before exercising any remedy, including draw down of the Letter of Credit, all as required by Section 22.2 of the Agreement. Duke Energy failed and refused to provide Fluor with such written notice or thirty-day cure period.

54.     At the time of Duke Energy's draw down, the Letter of Credit was not in danger of expiration or reduction in amount and had been amended to extend its effective date to October 1, 2020.

55.     As a result of Duke Energy's wrongful draw down of the Letter of Credit, as aforedescribed, Fluor was obligated under the terms of its credit facility with the bank issuing the Letter of Credit to immediately reimburse such bank the full amount of $67 million drawn

by Duke, which obligation Fluor satisfied in full on January 8, 2019.

56.     Duke Energy's draw down of the Letter of Credit was wrongful, premature, in bad faith, unreasonable and in material breach of the Agreement.

57.     By wrongly drawing on the Letter of Credit as aforedescribed, Duke Energy intentionally circumvented, nullified and vitiated Fluor's rights under the Agreement.

58.     On January 15, 2019, Fluor protested in writing Duke Energy's wrongful draw down of the Letter of Credit and demanded return of those funds and payment of outstanding overdue invoices from Fluor.  (A copy of that letter is attached hereto as **Exhibit J**.)

59.     On January 18, 2019, Duke Energy responded to that letter and rejected Fluor's demands therein, stating, *inter alia*, that the $109 Million Invoice "was valid [and] Fluor did not pay that invoice in a timely manner . . . and . . . Fluor therefore failed to fulfill certain of its obligations under the Agreement."  (A copy of that letter is attached hereto as **Exhibit K**.)

60.     On April 24, 2019, Fluor issued a Dispute Engagement Notice to Duke Energy pursuant to Article 25.1(a) of the Agreement, seeking, among other things, the resolution of the dispute as to Duke Energy's right to draw down the Letter of Credit.  (A copy of the April 24, 2019 Dispute Engagement Notice is attached hereto as **Exhibit L**).  Fluor intends to fully and in good faith engage in and complete the Agreement's dispute resolution process no later than July 31, 2019, as ordered by the Court in its Order dated April 16, 2019 (Dkt. 25).

61.     Pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. § 2201, *et seq.*, a justifiable controversy exists between Fluor and Duke Energy as to whether Duke Energy had the lawful right to draw down the Letter of Credit in the manner it did.

62.     This Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §§ 1331 and 2201.

63.     Said dispute is an actual cause or controversy for the purposes of the Federal Declaratory Judgment Act, and this court is empowered to render a declaratory judgment rendering the rights of the parties in said dispute pursuant to 28 U.S.C. §§ 2201 and 2202.

64.     Accordingly, Fluor is entitled to an order pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 declaring that Duke Energy's draw down of the Letter of Credit was wrongful and in breach of the Agreement and applicable Change Orders, and Fluor is, therefore, entitled to a refund in full of said $67,000,000 plus interest and costs.

**COUNT TWO: Breach of Contract – Non-Payment of Invoices**

65.     The background facts alleged in Paragraphs 1 through 36 inclusive above are hereby re-alleged in Count Two as if fully set forth herein.

66.     Pursuant to Article 9 of the Agreement, Duke Energy is obligated to pay Fluor for work performed upon the completion of specified payment milestones as set forth in Exhibit C to the Agreement.

67.     In accordance with that provision and after substantial completion of the work required for each Payment Milestone, Fluor submitted milestone payment invoices to Duke Energy, for which full payment then became due Fluor within forty-five (45) days thereafter, as provided in the Agreement.

68.     Duke Energy has breached the Agreement by failing and refusing to pay Fluor in full for all amounts owed to Fluor under the Agreement.

17

69.     More particularly, Duke Energy has, to date, breached the Agreement in that it has failed and refused to pay Fluor the sum of $101,586,257 as evidenced by Duke Energy's:

    a.    failure and refusal to pay the balance due on Payment Invoice No. A5VI-AUG18 137 1367 in the amount of $1,344,536, a copy of which is attached hereto as **Exhibit M**;

    b.    failure and refusal to pay the full sum due on Payment Invoice No. A5VI-NOV18 137 1367 in the amount of $59,124, a copy of which is attached hereto as **Exhibit N**;

    c.    failure and refusal to pay the full sum due on Payment Invoice No. A5VI-NOV18 137 1367A in the amount of $33,000,000, a copy of which is attached hereto as **Exhibit O**;

    d.    failure and refusal to pay the full sum due on Payment Invoice No. A5VI-DEC18 137 1367 in the amount of $72,129, a copy of which is attached hereto as **Exhibit P**;

    e.    failure and refusal to pay the full sum due on Payment Invoice No. A5VI-JAN19 137 1367 in the amount of $110,468, a copy of which is attached hereto as **Exhibit Q**; and

    f.    draw down of the $67 million Letter of Credit on January 8, 2019, as aforedescribed, so as to nullify, rescind and reclaim prior milestone payments issued to Fluor to the extent of $67 million.

70.     On February 19, 2019 and March 29, 2019, Fluor issued Dispute Engagement Notices to Duke Energy pursuant to Article 25.1 (a) of the Agreement, which sought, among

other things, the resolution of the dispute involving Duke Energy's failure and refusal to pay Fluor's invoices as described above (copies of the February 19, 2019 and March 29, 2019 Dispute Engagement Notices are attached hereto as **Exhibits R and S** respectively), and the parties thereafter began that process.  Fluor's Dispute Engagement Notice of April 24, 2019 (*see* **Exhibit L**, *supra*) states Fluor's intention to pursue that process in conjunction with the dispute resolution process already underway as a result of the aforedescribed Dispute Resolution Notices, and complete the consolidated processes by July 31, 2019 in accordance with the Court's Order dated April 16, 2019 (Dkt. 25).

71.     As a result of Duke Energy's breaches of the Agreement as aforedescribed, Fluor has suffered great financial harm and detriment.

72.     In addition, the Agreement between Fluor and Duke Energy also contained an implied covenant of good faith and fair dealing, which requires honesty, in fact, and good-faith cooperation so as to protect the reasonable contractual expectations of the parties.

73.     By failing to perform its express obligations under the Agreement, as aforedescribed, Duke Energy breached that covenant of good faith and fair dealing by acting dishonestly and in bad faith when:

a.     It failed and refused to make payments due Fluor for work performed under the Agreement, as required by Sections 9.1, 9.2 and 9.3 of the Agreement; and

b.     Having deemed the $109 Million Invoice not subject to a good faith dispute, it failed and refused to provide Fluor with written notice that payment was past due and a thirty-day cure period before exercising any

remedy it may have had, including draw down of the Letter of Credit, as required by Section 22.2(a) of the Agreement.

TGL/227296/0061/1580812v9
04/26/19-HRT/RMQ

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered in its favor against Defendant for: (1) a declaratory judgment that Defendant's draw down of the standby Letter of Credit was wrongful and that those funds be returned to Fluor; (2) monetary damages in an amount to be established at trial; (3) prejudgment and post-judgment interest and court costs; and (4) such other and further relief as the evidence warrants and as deemed just and proper.

Dated:  April 26, 2019                    PLAINTIFF:
                                          FLUOR ENTERPRISES, INC.


                                          _____/s/  Louis R. Pepe_____
                                          Louis R. Pepe, *Admitted Pro Hac Vice*
                                          Connecticut Bar Number:  ct04319
                                          Thomas G. Librizzi, *Admitted Pro Hac Vice*
                                          Connecticut Bar Number:  ct04647
                                          *Lead Trial Counsel*
                                          McELROY, DEUTSCH, MULVANEY &
                                          CARPENTER, LLP
                                          One State Street, 14th Floor
                                          Hartford, CT 06103
                                          (860) 522-5175 Phone/(860) 522-2796 Fax
                                          lpepe@mdmc-law.com
                                          tlibrizzi@mdmc-law.com

                                          James S. Myers
                                          Florida Bar Number: 64246
                                          McELROY, DEUTSCH, MULVANEY &
                                          CARPENTER, LLP
                                          201 East Kennedy Boulevard, Suite 815
                                          Tampa, FL 33602
                                          (813) 285-5520 Phone/(813) 488-1183 Fax
                                          jmyers@mdmc-law.com

TGL/227296/0061/1580812v9
04/26/19-HRT/RMQ

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2019, a true and correct copy of the foregoing

SECOND AMENDED COMPLAINT has been served through the CM/ECF system to all

registered CM/ECF recipients.


                    /s/  Louis R. Pepe
Louis R. Pepe, *Admitted Pro Hac Vice*
Connecticut Bar Number:  ct04319
Thomas G. Librizzi, *Admitted Pro Hac Vice*
Connecticut Bar Number:  ct04647
*Lead Trial Counsel*
McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
One State Street, 14th Floor
Hartford, CT 06103
(860) 522-5175 Phone/(860) 522-2796 Fax
lpepe@mdmc-law.com
tlibrizzi@mdmc-law.com

James S. Myers
Florida Bar Number: 64246
McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
201 East Kennedy Boulevard, Suite 815
Tampa, FL 33602
(813) 285-5520 Phone/(813) 488-1183 Fax
jmyers@mdmc-law.com

TGL/227296/0061/1580812v9
04/26/19-HRT/RMQ